is BIRDEYE MIDDLETON versus the Secretary of Veterans Affairs 2013-7014. Mr. Sawyer. Thank you, Your Honor. May it please the Court. Mr. Middleton's diabetes is more severe than the 20% rating level. Although his diabetes could initially be controlled with oral hypoglycemic agents and a restricted diet, it eventually deteriorated to the point that he required regulation of activities and the injection of Bietta. Nonetheless, the Secretary... But this doesn't apparently require insulin. Well, Your Honor, we disagree with that as far as what the regulation means. Well, we don't review facts here, do we? No, certainly, but I don't think that's a factual issue. The question is, what does the regulation mean when it says requires insulin? And the regulation simply says requires insulin. It doesn't say being administered insulin. And that is an interpretation the Secretary has taken. Now, if you look at the text of the statute... Could you just answer for me, I guess, what's really a medical question? Sure. Are there people covered by whatever this section of the hierarchy is, the particular people with diabetes, who do not require more insulin than their body is producing? Or is that true of all of the diabetics covered by that? I'm not sure I understand the question, Your Honor. You're making an argument that somebody requires insulin if they need more than their body is covered. One thing that it seems to me, if true, would count against that is if all the diabetics required insulin in that sense. Is that true or not? That's why it's a medical question. I don't know enough. It's not true, Your Honor, that all diabetics require insulin in that sense. All diabetics covered by... I don't have the thing in front of me. Diagnostic Code 7913? Yes. That's not true. And the reason why is that there are many diabetics with simply mild diabetes that can be manageable by restricted diet alone. And those diabetics would qualify into the 10% rating level. And the restricting of the diet doesn't produce more insulin than their body is producing, it does something else? I'm not aware that it causes their body to produce more insulin. Mr. Sawyer, the regulations use the term oral hypoglycemic agent. Obviously, they knew how to say insulin when they wanted insulin. In fact, in 20, they used both. So, when they say oral hypoglycemic agent, they don't mean insulin. That's correct, Your Honor. Oral hypoglycemic agent, we are not pretending that means it. And your client is receiving that rather than insulin? Well, he is receiving that, but he's also receiving injections of biota, which is not an oral hypoglycemic agent. But it's not insulin? No, it's not insulin, but it causes his body to secrete additional insulin. And what's in the record is a clear indication that his diabetes could not be controlled on oral hypoglycemics alone. He had to go further and he had to regulate his activities and take biota injections. And it is the injection of biota that causes his body to secrete additional insulin, and that's how it controls his diabetes. Your argument is that naturally produced insulin, artificially produced, is equivalent to the chemical injection or application of insulin, of the chemical insulin? Yes, Your Honor. That's your position? Yes, it is. And it's supported by other portions of the rating schedule that we've cited in our opening brief. For example, at the 100% level, there's an indication that the insulin has to come in a specific way. It has to be injected. But that's not found at the 40% level. Similarly, when the rating schedule refers to other endogenously produced substances, such as corticosteroids, when it wants to indicate that those corticosteroids have to come through external administration, there are additional terms, such as therapy or corticosteroid drugs, that indicate that that agent has to come through external administration alone. That's the argument over whether insulin means injected insulin or administered, externally administered insulin. That runs through these briefs, is that right? Yes. My problem with your argument is the argument that you yourself made in your brief, which is that the way this diagnostic code is written is obsolete, because it was written at a time when external, we'll call it external, insulin injections were the standard treatment for this type of diabetes. And as you argue in your brief, modern medicine has advanced since then. And I take that that's an interesting and no doubt accurate description of where we are. But the problem is that V.A. has not seen fit to update its codes when they could have. And so we're sort of stuck with the old time rule in a modern day context. Good argument for going to the V.A. and saying, why don't you people get your act together? Currently, there's a lot of that going on in Washington. But I'm not sure that we're in a position to rewrite the obsolete regulation to bring it up to date. Tell me how we deal with that. Certainly, Your Honor. My position is not the regulation as written is obsolete. My position is that the Secretary's interpretation of the regulation is obsolete. The regulation as written simply says the veteran's diabetes needs to require insulin, not that it needs to require the external administration of insulin. And if you look at the regulatory history underlying Diagnostic Code 7913, it's clear that what the Secretary was considering was how well the diabetes is controlled and looked at the need for insulin, not the administration of insulin, but the need for insulin as a reliable indicator of how well the diabetes is controlled. In other words, if he needs insulin, but he's not getting it, is that malpractice? Or is it a question of judgment? We don't get into that, do we? We just read the regulation. Your Honor, I would say that he is getting insulin. And as far as the legal question of what does the regulation... How is he getting insulin? Through biota injections. They cause his body to secrete additional insulin. But we're not asking the court to resolve that. That is a factual issue. We're not asking the court to get into that. What we're asking the court to do is interpret the regulation to mean exactly what it says. Requires insulin simply means needs insulin. And that's a legal question that we think this court has jurisdiction to resolve. Our presiding judge believes in the significance of our light. So let me move you to what I think is the more challenging question, and that is the 4.7. How does that work? Thank you, Your Honor. This is a regulation in Section 4.7 that hasn't previously been considered by this court. But the place this is found in the rating schedule indicates that this applies to all diagnostic codes in the rating schedule. And it simply says, when there's a question as to which of two diagnostic rating levels apply, if you're closer to one, you're closer to the higher one, then that is the one that should apply in a particular case. Now, we're not asking the court to determine whether Mr. Middleton is closer to the 40% level. We're simply asking the court to determine that Section 4.7 applies to Diagnostic Code 7913. So as I was thinking about 4.7, it seemed to me, and correct me, that there are two possible meanings. One is it applies only in a circumstance where, when you look at a couple of different levels, neither one of them clearly applies to the person. And then you don't say, well, go away. You say, this one doesn't fit because one requirement is missing. This other one doesn't fit because this other requirement is missing, and I've got to figure it out. The other meaning is I think the one that you're contending for, and I think is the one you need here, which is one level plainly applies, no dispute, to 20% level. But he has at least one additional characteristic, but not all the characteristics, of the next level. The problem, and I take this to be the government's point about, I forget what word they use, but if that meaning of 4.7 were adopted, then untold numbers of cases would require a judgment about whether somebody who plainly falls into a lower level has just enough to really bump you up into the higher level. And that would tend to undermine the structured hierarchy of this piece of the diagnostic codes. Your Honor, I am asking for the latter interpretation that you identified, but it is the exact interpretation the Veterans Court applied in Tatum. In Tatum, the veteran had fatigability, which was one of the requirements for the lower rating level, and that was all they needed to qualify for that lower rating level. But the Veterans Court said, well, that doesn't matter because they also have additional criteria that are found at the higher rating level. And they didn't have all of the additional criteria at the higher rating level, but they had some that were found only at the higher rating level. And the Veterans Court looked at that and said, that means 4.7 and 4.21 have to apply, and the veteran is therefore entitled to a determination under Section 4.7 as to whether they're closer to the higher rating or the lower rating. Now, I'm not saying that every case falls under 4.7, but if there's a clear indication, such as the regulation of activities criterion here, that the veteran qualifies for a criterion that's only found at the higher level, then the veteran just gets a determination to be made by the board, reviewed by the Veterans Court as to whether the veteran is closer to the higher rating level. Of how broad application, as a practical matter, would adopting that approach to 4.7 be for these structured pieces of the diagnostica? It feels to me, and I'll say this on the basis of experience, but it feels to me that it would pretty radically change the structured nature of that quite large piece of the benefit system. Your Honor, I don't think it would, and my understanding is that 4.7 general applies across the board, except for Diagnostic Code 7913. For some reason, this is just a unique exception, although there's no textual basis for it, and the Secretary has identified none, for creating this exception, Section 4.7 applies to all the other diagnostic codes. You mean none of the others have that same pattern? Is that what you're saying? It's hard for me to know what the right terminology is, whether it's conjunctive or disjunctive in the way it's spelled out, but are you saying that you think that the provisions under 7913 are uniquely phrased compared to all the others? I'm not saying that at all, but that's the position the Secretary has taken, and I don't think there's a way to look at the Diagnostic Code 7903 for hypothyroidism, that was at issue in Tatum, and see any distinction between that and the Diagnostic Code at issue here, 7913. And for that reason, I think because there's no textual distinction, there can't be a reasoned basis for only applying Section 4.7 to diagnostic codes other than 7913. Well, there clearly are two lines of cases in the veteran's cases, aren't there? There are, Your Honor, and Tatum... Tatum goes one way, and the court in this case went the other way, following, what's the name of it, Chawinga? Camacho? Camacho, yeah. And if I could speak to that, the difference here is that Camacho, the veteran in Camacho did not have regulation of activities. He didn't meet that criterion. Instead, he simply had insulin and a restricted diet. And there, he was asking for a determination under Section 4.7 when he didn't meet any of the criterion that are only found at the higher rating level. So he was basically saying, I have insulin and a restricted diet, which is what 20% says, and I'd still like a determination under Section 4.7. And the veteran's court said, no, you don't get that. But this is different because Mr. Middleton has regulation of activities, and that criterion is only found at the higher rating level, which is why we think this should apply. And there is no textual basis for why it shouldn't apply. With that, I'll reserve the rest of my time to rebuttal. Thank you, Your Honor. All right. Thank you, Mr. Sawyer. We'll give you the three minutes back. Mr. Hontos. Good morning, and may it please the court. And the court should affirm, because the veteran's court did not misinterpret Diagnostic Code 7913 or 38 CFR Section 4.7. I'd like to address first the requirement of the requiring insulin language and then turn to the 4.7 issue if I may. Requiring insulin does not mean simply a generalized need for insulin. And there are a couple of ways, a couple of anchor points that I'd like to give the court that really bring that into high relief. One is the language at the 100% level in 7913. If the court looks at the 100% level, it will find the same words, requiring and insulin. In between them is the daily injection of. Now, it seems to be beyond dispute that in that situation, the Secretary is clearly talking about the substance insulin requiring more than one daily injection of insulin. There really can't be a dispute that it's about the compound, the specific hormone insulin. And we're simply asking the court to take the same words, requiring and insulin, and apply them in the exact same way at the 40% level or the 20% level or what have you. It's the same regulation. So I think that's one anchor point. The second anchor point is if the court looks back at the sort of evolution of this diagnostic code. In 1996, this diagnostic code was updated. Prior to 1996, the language at this level required a large insulin dosage or a moderate insulin dosage. Again, it's got to be beyond dispute that when the language said a dosage of insulin, it's very clear that we're talking about the compound, not some generalized need for insulin. The body can't create enough. So when that was changed in 1996, the Secretary explained that the change wasn't to have a substantive change in the meanings of the word insulin or requiring for that matter. What the Secretary was trying to do is say, in light of medical science, it's clear that you can have two people, one person who responds very well to a large dosage, one person who responds very well to a small dosage, and they still could be impaired at the same level. So the Secretary stripped out the dosage language and retained requiring insulin. I think, again, that shows that the Secretary is talking about the substance insulin, the hormone insulin, and not just a generalized need. Going to the court's question about whether diabetics require insulin generally, this does get into medical issues, but my understanding is that if you're in 7913, if you are in that diagnostic code, you're a diabetic. That requires you to be type 1 diabetic, and that is where the body basically attacks the pancreas, the cells in the pancreas that are creating insulin, and therefore you don't have sufficient insulin in your body. Or you're type 2. Type 2 involves cells in the body that basically require more insulin to unlock the cells, to allow glucose to go into the cells and basically fuel the body. So in either case, you have this body underproducing insulin. Exactly. And this takes me to another point, and one was raised with the court earlier, and that is the notion that the... Well, I think what's critical, let me put it this way, maybe this is the best way to do it. What's critical is that insulin is the touchstone for diabetes, and there's certainly no... There's been no showing that that's not the case. And I think that we need to be cautious about getting into medical matters. Well, that's a little broad, because if you look at the 20% rating, you don't need insulin for the 20% rating. You can get a 20% rating based on hypoglycemic agent non-insulin. That's right, but you still have this generalized requirement for insulin. That's why our interpretation is that it can't mean... Requiring insulin can't be this general need, a deficiency in the body for insulin. The words insulin mean the component. Comes in a vial, it's the actual substance insulin. It does not mean... But for 20%, you don't need insulin. That's right. That's one of the paths. You do not have... To get a 20% rating. In a sense that is being advocated by Mr. Middleton, under 20%, you require insulin. If the court were to adopt Mr. Middleton's view, in that sense, they still have to require insulin because they're in Diagnostic Code 7913. There are two avenues under 20%. One is the hypoglycemics and the restricted diet. The other is insulin. What does the hypoglycemic do for you? Are you talking medically or... Medically. Well, there are numerous hypoglycemics. I guess this actually does get to the court's earlier question as well. Bayetta, if we're going to put our lab coats on and we're going to play in the medical box for a minute, Bayetta actually works much like a class of hypoglycemics. There's a that prompts the body to create more insulin. Basically coaxes more insulin out of the pancreas. That's exact. By definition, a hypoglycemic lowers blood sugar. Well, I think... Aside from mechanism. Yeah, that's right. That's really what we're getting at, though, is that we lower blood sugar through the use of insulin or through the use of something like Bayetta or a class of hypoglycemics that look just like Bayetta. In fact, the... That sounds like the secretary recognizes that there are alternatives to insulin, at least in some circumstances. There are. Oh, absolutely. Look at the court's reference. And still get a diabetic rating. Absolutely. The court's reference, it says hypoglycemics and 20%. You can be on a hypoglycemic and have a restricted diet and get service-connected 20% disability rating. And that's absolutely correct. But he wants 40% and that doesn't include hypoglycemic. That's right. It does not. And I guess I'd pick up on the court's question... Well, the court's suggestion. The secretary has been vested with a mandate to do these diagnostic codes. Section 38, USC, Section 1155, Congress has basically directed the VA to put forward this schedule and to, from time to time, revise that. And as we speak, there are doctors at VA who are actually looking at this stuff, who look at these regulations. I mean, literally, it is their job every day to come in and revise, review, take comments from the public. And that's certainly something that if Mr. Middleton believes that the code is obsolete or should be changed, he can submit a comment on the website. And I believe it actually triggers a duty on the part of the government to either respond and change the regulation or to explain at least why it's not going to be... You seem to be applying a plain meaning ruling to the diagnostic code. Is that fair? That is, you're saying when it says insulin, by golly, the secretary means insulin. Is that fair? That's right. We have an alternative argument, even if the court concluded that there was some ambiguity here, that under principles of Seminole Rock and our deference, that we would still be successful under that. That's set out in your brief. That's right. Your main argument is this is a plain meaning kind of problem and we ought to stick with it. Well, I would say that the plain meaning necessarily comes before a deference type argument. I think, yes, the court should stick with the plain meaning. I don't know if one is... Let's move that concept ahead to a discussion of, as I indicated to Mr. Sawyer, what's troubling me a bit more is the application of 4.1. Let me disclose where I'm coming from on this one. 4.1 is quite clear in its terminology. It says, where there is a question as to which of two evaluations shall be applied to higher... 4.7. I'm sorry, 4.7. Yes, thank you. 4.7. Where there is a question as to which of two evaluations shall be applied to higher, evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Now, I have 4.1 on my mind for a reason. I don't know if you're familiar with 4.1. 4.7 is part of the Chapter 4 or Section 4. 4.1 starts out saying, this rating schedule, the title is Essentials of Evaluative Rating. This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. So the secretary himself says, it's not a statute, and it's not even a firm regulation. It's a guide. Furthermore, the secretary then says in 4.21, in view of the number of atypical instances, it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. That suggests to me a rather broad, and of course, we're all familiar with 4.3, which calls for the department to administer the law under a broad interpretation. That sounds to me like we ought to apply a plain meaning interpretation to 4.7, which I remind you says, where there is a question, as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly applies. They are looking at the disability, not at the hormone specifically or the drug specifically. What I hear him saying, your opponent saying, is that Mr. Middleton has all these indicators that suggest he may be suffering from a disease, because that's closer to the 40% picture. At least he ought to be evaluated on that basis. Now, you're arguing that there's an implicit exception for this particular category. And that's, of course, what Camargo says. But I don't see support for that exception if you apply your plain meaning to 4.7. Help me with this. Sure. Let me sort of address the broader picture and then talk specifically about this diagnostic code. I think one, for broader purposes, that's very troubling. And I think the court alluded to this earlier. If 4.7 and 4.1 and sort of generalized principles can somehow alter this very regimented criteria, that's a recipe for chaos, frankly. Well, I don't know. I share your concern. And I, of course, share Judge Taranto's point about that. But that may be the secretary's problem, not this court's problem. Then that's fair enough. But I would just suggest that... The secretary wrote this stuff. That's exactly... Presumably meant it. That's exactly right. But let's look at what the secretary's task was when he had to write this schedule. Imagine starting from scratch. Imagine having to go and write a schedule that basically catalogs a host of diseases, thousands of diseases, that the human body can be afflictions for the human body, conditions for the human body, disorders, all sorts of things. There has to be some generalized principles that sort of are guiding that inquiry. That's an extraordinary task. And so that you have some precatory statements and some statements like... I would also direct the court to 4.20, which is not at issue in this case, but it's sort of in the same vein as the court's concerns. There has to be some general principles there that say, we have an enormous task. We're going to do the best we can. There may be situations, given the diversity of the human body and the conditions and the evolving state of medical science, that don't fit exactly right. And I would suggest that... I think you just described this case. No, I respectfully would disagree, Your Honor. Mr. Middleton had his case adjudicated by an examiner. The examiner determined that he did not meet these specific criteria. So this is a very different situation. And this actually gets me right back to 7913, where I want to be. And that is that the code is written... If we're going to be faithful to the text, look at 7913. It uses the word and. It is conjunctive. It is an element test. Can I ask... Mr. Sawyer suggested that the position here was that 7913 was somehow the you say about the regimented, structured nature of 7913 was pretty widely true, and that if the interpretation of 4.7 that he's pressing were adopted, it would have the kind of boundary blurring effects that I think are of real concern, not just in 7913, but more widely. Which is... What's the right way to look at it? Yeah, I heard that statement during the opening presentation. I'm not sure where the position... I don't think we've ever articulated a position that 7913 is the only diagnostic code. But are there a lot of other highly structured sets of criteria like 7913, where the position that he's pressing for 4.7 would require these inquiries that you have one of the additional criteria at the next level, but not all of them. And so we need to figure out if you're close enough. I'm trying to get a sense of what the real world consequences are one way or the other. Sure. I think the court needs to look at the way that the particular diagnostic code is constructed. And that's really when we talk about Camacho and Tatum makes a distinction between successive... I think it non-successive, non-cumulative. And that's going to be the touchstone. That's the sort of the task. The successive and cumulative diagnostic codes aren't going to... You're not going to get 4.7 that could come in and basically be an end run around those requirements. But Judge Taranto's question is how many other codes will be implicated if we decide that there's no non-successive distinction, which has no support anywhere in any of the language of the regs, but let's assume... Is Camacho, to your knowledge, have any other cases held the Camacho distinction applicable to any other of the codes? I'm unaware of that. And actually to the court's first question, I can't tell the court that of the 10,000 diagnostic codes, 5,000 will be one way, 5,000 will be the other way. I just don't have an answer to that. But what the court can do is even within 38 TFR 4.119, that's the sort of the endocrinology family where this diagnostic code is located. And also the diagnostic code at issue in Tatum, a very different diagnostic code for hypothyroidism. The court can sort of look there and see, and that would perhaps provide a sampling. And what do you say the crucial distinction is without... I'm not sure I really understand what the word successive means. Can you just explain it without using that word? Yeah, absolutely. So in a successive situation, not to use the word, but you understand what I'm saying. So at 10%, you would have symptom A. At 20%, it would be symptom A and symptom B. At 30%, symptom A, B, C. In the Tatum situation, rather, and the non-successive, again, to go there, you would have a situation where at 10%, symptom A. 20%, symptom B and C. 30%, D, E, and F. So each higher level doesn't incorporate by reference, in effect. That's exactly right. Look at diagnostic code 7903. That was the diagnostic code at issue in 1979. And that is very differently constructed from the type of building block type diagnostic code at issue in this case, 7913. So I think that Mr. Middleton relies on Tatum and contends that... Actually, I see that I'm well over my time. And unless the court has any further questions, I'll stop there and ask that the court affirm the decision of the Veterans Court. Thank you, Mr. Hontos. Ms. Soyo has four minutes. Thank you, Your Honor. If I could refer the court to page 8 in the reply brief, Mr. Middleton's reply brief. I think this gets to Judge Toronto's question regarding how diagnostic code 7903 compares to diagnostic code 7913. Now, the question in both cases was, is the veteran entitled to a determination? That's all we're asking for, is a determination under Section 4.7, is the veteran closer to the higher level? And here, we'll see, just like Ms. Tatum, Mr. Middleton has one criteria, regulation of activities that's only found at the higher rating level. Ms. Tatum's was mental sluggishness. Now, that criterion was established in both cases and wasn't found anywhere below. But similarly, like Ms. Tatum, Mr. Middleton has some criteria that are also established at the lower level. Tatum had fatigability, which was established at the lower level, and Mr. Middleton had restricted diet and oral hypoglycemic agents. But Mr. Middleton's criteria at the lower level are not repeated above. Oral hypoglycemic agent isn't repeated at the 40% level. It disappears and it's replaced with a different criteria, making these variable, not successive. And so, with respect to that, I don't think there's any, as Judge Plager pointed out, there's no textual basis for this argument that 4.7 doesn't apply to 7913. But there's also really no logical basis because there's no analytical way to distinguish the logic set forth in Tatum from Mr. Middleton's case. For that reason, I'd like to say that we return to Judge Taranto's question, which is... Now, assuming we agreed with you on that, what are the consequences of our doing that? I assume we would have to remand it back to the Veterans Court or remand back to the board to reconsider the question of whether he has shown a 4.7 balance that's closer to 40% than it is to 20%. That's what we would ask this court to do. We don't think this court has jurisdiction to or should be in the position of having to decide, is he closer to 40% or 20%? We're all doctors. Can I ask you a question? I mean, Tatum is a decision of the Veterans Court. That's right. So it's not itself an administrative decision establishing, making a policy choice that we can say, if you adopt this policy here, you either better follow it in indistinguishable circumstances or give a good reason why there is a distinction. It's just a judicial interpretation of the that doesn't bind us. That's right. It certainly wouldn't bind this court, no. So, I mean, what's the force of the argument that relies on Tatum as a premise which doesn't bind us either as a pure legal interpretation or as an administrative policy determination? Well, the principal force of my argument is based on the language of the regulations itself. But I think Tatum illustrates exactly how that language should be applied. I note the Secretary initially opposed the Veterans Court's decision in Tatum and said Section 4.7 should not apply to Diagnostic Code 7903, but did not appeal that decision to this court, which it had the option to do. And that indicates that at least there's not this huge problem with creating, applying Section 4.7 as it's written. It doesn't, I mean, it's a 2009 decision. The world hasn't come to an end since then. All that would be required from here on out is the board just has to, can't do what it did in this case, which is simply look at one criterion, the use of insulin, and say, that's missing, end of decision. There actually has to be a more holistic determination about the other disabilities or the other criteria associated with the veteran's disability. So for that reason, we'd ask the court to reverse. Thank you. Thank you, Mr. Sawyer. The case has been taken down.